**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

ALBERT WOODS and NARDA WOODS,

Plaintiffs,

v. No. 2:16-CV-1041-JCH/SMV

UNITED STATES OF AMERICA,
JAMES WELLS, M.D. and JOSHUA
CERNA, P.A.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Two motions are pending in this medical malpractice lawsuit. On March 24, 2017, Defendant the United States of America filed a Motion to Dismiss, or in the alternative, for Transfer of Venue (ECF No. 22), seeking transfer of this case to the Western District of Texas, El Paso division, because it believes that the operative facts underlying this lawsuit originated there. On April 25, 2017, the United States filed a Motion for Leave to Amend (ECF No. 33) its original answer to raise improper venue as an affirmative defense. The Court, having considered the motions, briefs, pleadings, and applicable law, concludes that both motions should be denied.

## I. FACTUAL BACKGROUND

On September 20, 2013 Plaintiff Albert Woods sought medical care at the William Beaumont Army Medical Center ("Beaumont") in El Paso, Texas to treat a painful blood clot that formed in his leg. *See* Comp. ¶ 4, ECF. No. 1. Beaumont, which is owned and operated by the United States, placed Mr. Woods on an anti-coagulant, and admitted him overnight. *Id*. ¶¶ 3-4. The following morning, Beaumont staff discharged Mr. Woods, prescribed him an anti-coagulant, and told him he could return to his home in Alamogordo, New Mexico. *Id*. ¶ 5. By the

time Mr. Woods reached Alamogordo, the pain in his leg had intensified. *Id*. Concerned, Mr. Woods' wife, Plaintiff Narda Woods, called Mr. Woods' treating physician at Beaumont, Dr. Johanna Hollweg, and told her that her husband's pain had worsened. *Id*.; Def.'s Ex. A, ECF No. 22-1. Dr. Hollweg advised Mrs. Woods to use alternating hot and cold packs to alleviate the pain, and told her that she would call Plaintiffs the next morning. *See* Comp. ¶ 5.

That morning, Mr. Wood's leg grew three times its size and a fluid seeped through the skin on his leg. *Id*. ¶ 6. Mrs. Woods once more telephoned Dr. Hollweg and reported the alarming change in her husband's leg. *Id*. Dr. Hollweg told the Plaintiffs to go to the emergency room at the Gerald Champion Regional Medical Center ("Gerald Champion") in Alamogordo. *Id*. Plaintiffs followed Dr. Hollweg's advice and went to Gerald Champion the same day. *Id*. ¶ 7.

Defendant James Wells was the supervising emergency physician at Gerald Champion, and was responsible for overseeing and reviewing the medical care provided by his staff, including that of his physician's assistant, Defendant Joshua Cerna. *Id*. Mr. Cerna evaluated Mr. Woods upon arrival. *Id*. Uncertain about what caused Mr. Woods' medical condition, Mr. Cerna told the Plaintiffs to return home and go to back Beaumont the following day. *Id*. Mr. Cerna never contacted Mr. Woods' physician at Beaumont to assess Mr. Woods' condition, nor did Mr. Cerna consult with his supervisor, Dr. Wells. *Id*. ¶¶ 7, 14. Likewise, Dr. Wells never evaluated Mr. Woods, and never spoke to either Mr. Cerna or staff at Beaumont about Mr. Woods. *Id*.

The following day, Plaintiffs returned to Beaumont. *Id*. ¶ 8. Staff there immediately admitted Mr. Woods, recognizing that he was at risk of losing his leg because of compartment syndrome. *Id*. Compartment syndrome is a condition in which increased bleeding accumulates in groups of muscles, impeding blood flow to and from tissues. *Id*. Increased bleeding, which is a side effect of anti-coagulant medication, may have formed a blood clot in Mr. Woods' leg, which

in turn caused compartment syndrome. *Id*. Beaumont staff responded by performing emergency surgery on Mr. Woods' leg to decompress the muscles. *Id*. Although staff saved his leg, Mr. Woods suffered from complications of compartment syndrome, including sepsis and renal failure, and various other complications which still trouble him today. *Id*. ¶ 10.

## II. PROCEDURAL BACKGROUND

On September 20, 2016 Plaintiffs filed suit against Defendants under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, which subjects the United States to liability for the tortious conduct of its employees; and, in accordance with 28 U.S.C. § 1346(b)(1), under the common law of New Mexico for negligence stemming from the Defendants' alleged failure to adhere to the standard of care observed by physicians. *See* Comp. ¶¶ 1, 11-14.

On March 6, 2017 the United States filed its answer ("Answer"), its first responsive pleading in this case. In its Answer, the United States did not challenge venue in the District of New Mexico. Nor did the United States amend its Answer as of right within 21 days of filing it to include a challenge to venue. In a post-answer motion, the United States, for the first time, filed a Motion to Dismiss for Improper Venue, or in the Alternative, for Transfer of Venue to the Western District of Texas. Dr. Wells and Mr. Cerna – who are represented by separate counsel in this matter - took no position on the United States' Motion. *See* ECF No. 32. Then, about one month after answering the Complaint, the United States filed a Motion for Leave to Amend its Answer, seeking the Court's leave to affirmatively plead a challenge to venue in this District. Plaintiffs oppose this Motion. *See* ECF No. 40.

On July 7, 2017 Plaintiffs and the United States agreed to dismiss with prejudice all of Mrs. Woods' claims against the United States. Thus, Mrs. Woods asserts claims only against Dr.

Wells and Mr. Cerna; Mr. Woods, meanwhile, maintains all of his claims against each Defendant.

## III. MOTION FOR LEAVE TO AMEND ANSWER

The United States contends that its Answer did, in fact, assert the defense of improper venue, even if it expressly omitted it as an affirmative defense. According to the United States, its Answer challenged venue in three ways. First, it "denied that jurisdiction is appropriate in this Court and that New Mexico law applies, which implicates the venue question." Second, it challenged each of the statutory bases for venue by denying the Complaint's allegations that Plaintiffs are New Mexico residents and that the tort occurred here. And third, it argues that its 27th affirmative defense, which states that "Defendant … has, or may have additional [unknown] affirmative defenses" that "Defendant specifically preserves … as they are ascertained through discovery" enables the United States to now raise the defense.

Even though the United States contends that its Answer properly asserted a challenge to venue, the United States nonetheless requests leave to amend its Answer to affirmatively plead such a challenge. The Court will next examine this request.

### A. STANDARD

Fed. R. Civ. P. 15(a)(2) provides for liberal amendment of pleadings, instructing courts to "freely give leave" to amend "when justice so requires." "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter vs. Prime Equipment Co.*, 451 F.3d. 1196, 1204 (10th Cir. 2006). Subsection 15(a)(2) provides that after a party has amended a pleading once as a matter of course or the time for amendments of that type has expired, a party may amend only by obtaining leave of court or if the adverse party consents. Leave should be "freely give[n] … when justice so requires," but leave need not be granted on "a

showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, … or futility of amendment." *Duncan v. Manager, Dept. of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

**B. ANALYSIS**

The United States seeks leave to amend its Answer to add a challenge to venue in the affirmative defense section of its Answer. The United States says that the amendment is not motivated by bad faith or to gain a strategic advantage, but simply to lay venue where it belongs, in the Western District of Texas. The Plaintiffs ask the Court to deny the Motion for Leave to Amend, believing that it would result in undue prejudice to them, although Plaintiffs fail to develop this argument.

The Court holds that Rule 15(a)(2)'s liberal thrust does not allow the United States to escape the consequences of its failure to plead a waivable defense by amending its Answer. Although Rule 15(a)(2) provides for liberal amendment of pleadings, the plain language of Rule 12(h) establishes that this amendment procedure is unavailable to raise the defense of improper venue under Rule 12(b)(3). *See* Fed. R. Civ. P. 12(h)(1)(b)(2) ("A party waives any defense listed in Rule 12(b)(2)-(5) by … failing to … include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."); *Am. Fid. Assur. Co. v. Bank of N.Y. Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016) ("[Rule] 12(h)(1) provides that a party waives the defenses listed in Rule 12(b)(2)–(5) … by failing to assert them in a responsive pleading or an earlier motion."). Rule 12(h)(1) "severely restricts" amending an answer under Rule 15(a)(2) to salvage a waived defense under Rule 12(b)(2)-(5). *See* 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1391 (3d ed. 2004). "[A]ccording to the language of

subdivisions (h)(1), this may be done only by an amendment to the answer permitted as a matter of course under the first sentence of Rule 15(a)[.]" *Id*.

As an alternative ground for denying the United States' Motion for Leave to Amend, the Court notes that adding the proffered amendment would be futile. If leave were granted, then the Court would ask whether a newly included Rule 12(b)(3) defense would be legally sufficient. It would not. In resolving a Rule 12(b)(3) motion, "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits. A district court may examine facts outside the complaint to determine whether its venue is proper. And … the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Hancock v. Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). Venue for an FTCA action may be brought only "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. 1402(b). The plaintiff bears the burden of proving proper venue. *Hancock*, 701 F.3d at 1260-61.

Assuming that "[a]ll well-pleaded allegations in the complaint bearing on the venue question … are taken as true," *Hancock*, 701 F.3d at 1261, Plaintiffs' Complaint satisfies the first prong of the venue statute, as it states Plaintiffs are New Mexico residents. Indeed, the United States' own exhibit, an administrative claim form – a precursor to filing a claim under the FTCA – affirms that Plaintiffs are residents of Alamogordo. *See* Def.'s Ex. A, ECF No. 22-1. *Cf. Pierce vs. Shorty Small's of Branson Inc.,* 137 F.3d 1190, 1192 (10th Cir. 1998) (affirming dismissal where defendant's affidavits clearly showed that plaintiff's choice of venue was improper).

Because Plaintiffs' Complaint made a *prima facie* showing they are New Mexico residents such that venue in this District is proper, and because the United States' proffered

amendment would not overcome this result, the Court denies leave to amend to add an objection to venue.

## IV. TRANSFER OF VENUE

### A. STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). A court should decide motions to transfer on an individualized, case-by-case basis. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515. In considering a motion to transfer, the court should consider the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp.*, 928 F.2d at 1516). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). Unless the balance of interests "is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965. "Courts in this circuit have recognized that when reviewing a motion to transfer, 'a court may consider evidence outside of the pleadings but must draw all reasonable

inferences and resolve factual conflicts in favor of the non-moving party.'" *Thompson v. Titus Transp., LP*, No. 11–CV–1338–EFM–KMH, 2012 WL 5933075, at *3 (D. Kan. Nov. 27, 2012).

**B. ANALYSIS**

**i. The Government did not address whether the transferee district would have personal jurisdiction over all defendants**

In order for the court in the transferee district to be one in which the case may have been brought, the transferee court must have subject matter jurisdiction, must have personal jurisdiction over the parties, and venue must be proper. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (noting that where action might have been brought depends on whether transferee court has proper venue and personal jurisdiction over parties); *Chrysler Credit Corp.*, 928 F.2d at 1515 ("§ 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there."). In other words, venue must be proper in the transferee district and the transferee court must have jurisdiction over all the defendants. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed.Appx. 86, 106 (10th Cir. 2012).

The Court is unable to fully examine the threshold question of whether this case might have been brought in the transferee district because neither party addressed whether that district would have personal jurisdiction over each Defendant. For example, the United States wholly failed to address whether Dr. Wells and Mr. Cerna – the treating medical personnel in Alamogordo – have any contacts with the State of Texas. The United States made no representation whatsoever that Dr. Wells and Mr. Cerna "purposefully availed" themselves of the transferee district such that a court there could exercise personal jurisdiction over them. Its failure to address this issue is fatal to its Motion for Transfer of Venue. It was the United States' burden, as the moving party, to prove that the transferee district would have personal jurisdiction over each defendant. *See Lutron Electronics vs. Creston Electronics*, No. 2:09–cv–00707–DB–

BCW, WL 1529249, at *2, (D. Utah April 14, 2010) (denying defendant's motion to transfer venue because moving defendant could not show that transferee court had personal jurisdiction over all defendants).

The United States so far has not carried its burden to show that this case might have been brought in the Western District of Texas. The Court will next examine whether the United States can carry its additional burden to demonstrate that this District is an inconvenient forum.

**ii. The balance of interests weighs against transfer**

Section 1404(a) "permits a 'flexible and individualized analysis,' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *United States ex rel., Brown Minneapolis Tank Co. v. Kinley Constr. Co.*, 816 F. Supp. 2d 1139, 1149 (D.N.M. 2011) (citing *Chrysler Credit Corp*., 928 F.2d at 1516). The Court considers relevant the following factors.

A. <u>Plaintiffs' Choice of Forum</u>

This element weighs against transfer. "Unless the balance is strongly in the favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965. This factor weighs most heavily against transfer when a plaintiff files suit in its home forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp*., 549 U.S. 422, 430 (2007). But "where the facts giving rise the lawsuit have no material relation or significant connection to the plaintiff's chosen forum," courts assign this factor "little weight." *Employers Mut. Cas. Co.*, 618 F.3d at 1168. In this case, the movant must show that a "single, alternative venue" would be more appropriate than the plaintiff's chosen venue. *Id*. at 1168.

The Court recognizes that Plaintiffs' choice of venue is this District is given deference because Plaintiffs are residents here. The United States tries to overcome this deference by

arguing that New Mexico lacks a significant connection to the operative facts underlying Plaintiffs' lawsuit. The United States notes that the alleged negligence began at Beaumont, in Texas, and continued throughout Mr. Wood's two visits there. Key witnesses, including about 12 medical personnel at Beaumont who treated Mr. Woods, are in Texas. So are records related to Mr. Woods' treatment there. The United States argues that Mr. Woods' single visit to Gerald Champion in Alamogordo pales in comparison to where more of the facts underlying this lawsuit are located, in Texas.

The Court agrees with the United States that much of its likely evidence may be centered in Texas, but this alone does not merit transfer. "[T]he inquiry at this stage is not whether some other forum has a *greater* material relation or significant connection – it is whether this particular forum has at least *some* material relation or significant connection to the facts giving rise to the lawsuit." *F.H.G. Corporation v. Green Wave Inc.*, No. 1:16:-cv-00164-JNP, 2017 WL 2728412, at *5 (D. Utah June 06, 2017) (emphasis in original). Given that Mr. Woods went to Gerald Champion at Dr. Hollweg's direction to treat the effects of the alleged medical malpractice originating in Texas, the Court cannot say that New Mexico lacks at least some material relation to the facts of this case. *See id*. Because Plaintiffs reside in this District and because this District bears some material relation to the facts of this case, the Court finds that this factor weighs against transfer.

B. Accessibility of Witnesses and Sources of Proof

This element weights against transfer. "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169. In order to establish that the inconvenience to material witnesses weighs in favor of transfer, "the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality

of their testimony and (3) show that any such witnesses [are] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id*.

The United States has carried its initial burden to identify the name and residency of at least 12 witnesses, all current or former employees at Beaumont who live or are believed to live in El Paso. The United States has not, however, carried its extra burden to "indicate the … materiality of their testimony." *Id.* The United States merely indicated its witnesses' names and purported residency, and stated that their lives would be interrupted by having to travel to New Mexico for trial. This is insufficient. *See id.*("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, … the application for transferring the case should be denied."). The Court will not order a change in forum simply because a great number of witnesses are located elsewhere. *See id.* ("The materiality of the prospective witnesses['] testimony, and not merely the number of prospective witnesses, will determine the extent to which their convenience will be weighed.").

Nor has the United States represented that "any such witnesses [are] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id*. The United States made no representation that reliance on deposition testimony for its witnesses would be prejudicial to its case. The United States also does not indicate that compulsory process would be necessary. Besides, where the United States' witnesses are its own employees and ostensibly within its control, the issue of compulsory process is less significant. *See Lewis v. Grote Indus. Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012) ("[C]ourts are less concerned about the burden that appearing at trial might impose on witnesses who are employees of parties because it is presumed such witnesses will appear

voluntarily.”). Thus, because the United States has not identified that the inconvenience to witnesses requires a transfer, the Court finds that this element weighs against transfer.

C. Cost of Making Necessary Proof

This element weighs against transfer. “Merely shifting the inconvenience from one side to the other … is not a permissible justification for a change of venue.” *Scheidt*, 956 F.2d at 966. “[I]n any case, there will be some witnesses who are inconveniently located.” *Cmty. Television of Utah, LLC v Aereo, Inc.*, 997 F. Supp. 1191, 1207 (D. Utah Feb. 19, 2014). The United States argues that litigating this case would be more economical in El Paso because all of its principal witnesses and documents are there. As explained above, the United States has not provided the Court with any evidence that its likely witnesses or other evidence are so crucial to necessitate a change in forum. When, as here, “the record contains no evidence concerning the potential costs of litigating the case in” Texas, the Court holds that this element weighs against transfer. *Emp’rs Mut. Cas. Co.*, 618 F.3d at 1169.

D. Difficulties that May Arise from Congested Dockets

The difficulties of court congestion weigh against transfer. “When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge.” *Id*. Based on all but one of these statistics (median time from filing to disposition), the District of New Mexico has a less congested docket than the Western District of Texas. *See* Table N/A – U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (June 30, 2016), http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1.

E. Conflict of Laws

The conflict of law factor is neutral because both a New Mexico and Texas federal court would apply the same law. The Complaint alleges a federal cause of action brought under the FTCA. Under the FTCA, the applicable law is that of the state where the negligence occurs, including that state's conflict of laws rules. *See Richards v. U.S.*, 369 U.S. 1 (1962). Whether this case is litigated in New Mexico or Texas, either federal district court would be competent to apply state conflict of laws rules. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (stating that "federal judges are qualified to apply state law.").

**iii. Conclusion**

The United States has failed to show that transfer of venue is strong enough in its favor to necessitate a transfer. Although the United States has shown that litigating this case in El Paso would be more convenient for its witnesses, it has failed to specify the materiality of its witnesses' testimony or explain why they their testimony is crucial enough to necessitate a change in forum to accommodate them. When, at this stage, the Court must ask whether there is some material connection between New Mexico and the underlying facts of the lawsuit, the Court is persuaded that Mr. Wood's medical treatment in Alamogordo – prompted by Beaumont employees' alleged negligence in Texas – supplies that connection.

## V. MOTION TO DISMISS FOR IMPROPER VENUE

### A. ANALYSIS

As discussed above The United States did not file a Rule 12(b)(3) motion before filing its Answer, did not include improper venue as a defense in the Answer, and did not amend the Answer to include the defense within 21 days as a matter of right. The United States waived its objection to venue, therefore the Court denies its Motion to Dismiss for Improper Venue.

**IT IS THEREFORE ORDERED** that

1. Defendant's Motion to Dismiss, or in the alternative, for Transfer of Venue to the Western District of Texas **(ECF No. 22)** is **DENIED**.
2. Defendant's Motion for Leave to File an Amended Answer **(ECF No. 33)** is **DENIED**.

**United States District Judge**